<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| P.C. OF YONKERS, INC., PARTY CITY OF CLIFTON, INC., PARTY CITY OF HAMILTON SQUARE, INC., PARTY CITY OF LAWRENCEVILLE, INC., PARTY CITY OF NORTH BERGEN, INC., P.C. OF VOORHEES, INC., EAST HARRISBURG P.C., INC., LANCASTER P.C., INC., MONTOGOMERYVILLE P.C., INC., PARTY CITY OF COTTMAN AVENUE, INC., PARTY CITY OF HARRISBURG, INC., PARTY CITY OF LEHIGH VALLEY, INC., PARTY CITY OF READING, INC., PARTY CITY OF SPRINGFIELD, INC., PARTY CITY OF YORK, INC., SCRANTON PARTY CITY, LLC, STROUDSBURG P.C., INC., WILKES-BARRE PARTY CITY LLC, and PARTY CITY MANAGEMENT CO., INC., | : : : : : : : : : : : : : : : : : : : : | Civil Action No. 04-4554 (JAG) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| CELEBRATIONS! THE PARTY AND SEASONAL SUPERSTORE, L.L.C., ANDREW BAILEN, and ANDREW HACK, | : : : : : | |
| Defendants. | : | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motions to dismiss Plaintiffs' complaint for

failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6), by

1

Defendants Celebrations! The Party and Seasonal Superstore, L.L.C. ("Celebrations!"), Andrew

Bailen, and Andrew Hack (collectively, "Defendants").  For the reasons set forth below,

Defendants' motions will be denied.

## I.  INTRODUCTION

On September 21, 2004, Plaintiffs filed the instant action against Defendants, asserting

causes of action for violations of (1) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030

("CFAA"); (2) N.J. Stat. Ann. § 2A:38A-1, et seq.; (3) misappropriation of trade secrets and

confidential proprietary information; and (4) breach of the duty of loyalty.

On October 25, 2004, this Court entered an order denying Plaintiffs' motion for a

preliminary injunction.  Plaintiffs appealed this Court's decision, and the matter was stayed

pending a decision by the Circuit Court of Appeals.  On November 7, 2005, the Third Circuit

affirmed this Court's refusal to issue a preliminary injunction.  See P.C. Yonkers, Inc. v.

Celebrations The Party And Seasonal Superstore, LLC, 428 F.3d 504 (3d Cir. 2005).

On June 5, 2006, this case was reopened, and on July 7, 2006, Defendants moved to

dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted,

pursuant to FED. R. CIV. P. 12(b)(6).

## II.  FACTUAL BACKGROUND

### A.  Background

Plaintiffs, with the exception of Plaintiff Party City Management Co. ("PC

Management"), are individual retail stores selling discount party goods and related products (the

"PC Store Plaintiffs").  (Complaint ("Compl."), ¶ 24.)  The PC Store Plaintiffs are independently

incorporated in and located throughout New Jersey and Pennsylvania, and operate pursuant to

franchise agreements entered into by each Plaintiff with Party City Corporation ("PCC").  (Id., ¶¶ 1-18, 24-28.)  PC Management was created to manage the operations of the PC Store Plaintiffs and four other franchised locations.  (Id., ¶ 28.)

Defendant Celebrations! was allegedly formed in New Jersey in October 2003, after the PC Store Plaintiffs were franchised, and obtained authority to do business in New York in April 2004.  (Id., ¶ 29.)

Defendant Bailen served as the Executive Vice President for Merchandising and Marketing for PCC from August 2000 through July 2003.  (Id., ¶ 30.)  Plaintiffs contend that Bailen's responsibilities included negotiating vendor terms with vendors for PCC store products sold in both company-owned and franchised locations.  (Id.)  Pursuant to his employment agreement with PCC, Bailen purportedly agreed to maintain the confidentiality of PCC's proprietary information during his employment and thereafter for an agreed upon period of time.  (Id., ¶ 31.)  Bailen also allegedly agreed not to give PCC data to third parties.  (Id.)

Defendant Hack, who is also a member of Celebrations!, was employed by PCC in various positions from March 1991 through August 18, 2003, when PCC terminated his employment.  (Id., ¶ 32.)  At the time he was terminated, Hack held the title of Franchise Business Consultant – Northeast Region.  (Id.)  Hack's job responsibilities for PCC included assisting franchisees in day-to-day operations and ensuring franchisee compliance with PCC standards, as well as facilitating communication between PCC and its franchisees in the northeastern United States, including the PC Store Plaintiffs and other stores managed by PC Management.  (Id.)  According to Plaintiffs, PCC's personnel handbook mandated that Hack not divulge PCC data to third parties.  (Id., ¶ 33.)  After Hack was terminated by PCC, PC

3

Management employed him from mid-September 2003 through November 25, 2003 as a consultant.  (Id., ¶ 34.)

Plaintiffs allege that Defendants currently operate two party goods stores under the name Celebrations (the "Celebrations! Stores") in direct competition with all the PC Store Plaintiffs, and in particular the PCC Stores in Yonkers and Clifton.  (Id., ¶ 35.)  The Celebrations! store located in Clifton, New Jersey, approximately one-half mile from the PCC franchise in Clifton, opened in late 2004, and the Celebrations! store located in Greenburgh, New York, allegedly in competition with the PCC francise in Yonkers, opened in late July or early August 2004.  (Id.) Plaintiffs contend that the Celebrations! Stores opened just in time to compete with the PC Store Plaintiffs during their biggest selling season – the weeks leading up to Halloween.  (Id., ¶ 26.)

### B.     Alleged Trade Secrets and Proprietary Information

As PCC franchises, each of the PC Store Plaintiffs is required to obtain, install, and maintain computer hardware and software that enables them to use a retail sales and inventory management computer system known as "Tomax."  (Id, ¶ 37.)  According to Plaintiffs, each computer on which Tomax information is located is kept in a locked office to which only senior-level managers in Plaintiffs' employ have access.  (Id., ¶ 38.)  PCC also requires the PC Store Plaintiffs to install and maintain a toll free telephone line ("800 Number") and modem so that PCC can dial in, inspect, and monitor information concerning their stores.  (Id.)  Each PC Store Plaintiff has a different password and 800 Number.  (Id.)  Although PCC can review information from all of the stores in its franchise, each of the PC Store Plaintiffs can only review data pertaining to its own store.  (Id.)

The Tomax system stores revenue and customer data as well as product and vendor

information for all PCC stores.  (Id., ¶¶ 37-38.)  This information includes data tracking each PCC franchise's sales on a daily, weekly, monthly, and annual basis ("financial information"); each customer's zip code ("customer data"); data concerning the number of units, prices, and sales of particular merchandise ("merchandise information"); and vendor rosters and terms relating to discounts, promotions, and dates by which products should be ordered for a particular holiday season ("vendor information").  (Id., ¶¶ 39-42.)  Plaintiffs contend that all of this information constitutes valuable trade secrets and confidential proprietary information acquired by the PC Store Plaintiffs at great expense.  In addition to the cost of installing the hardware and software required to use the Tomax system, the PC Store Plaintiffs collectively pay over $1 million per year for PCC to analyze, consolidate, report, and supply the information to them. (Id., ¶¶ 43-44.)  Plaintiffs further contend that all of the information in the Tomax system is historical, having been developed through years of operation, such that it cannot be obtained from other sources or duplicated.  (Id., ¶ 45.)

### C.    Defendants' Alleged Conduct

Plaintiffs allege that as senior-level employees, the individual defendants, Bailen and Hack, had access to general revenue and ranking information pertaining to the PC Store Plaintiffs, as well as the detailed information in the Tomax system.  (Id., ¶ 47.)  Plaintiffs contend that Hack improperly accessed this data via modem and used it to determine where to locate and how to operate the Celebrations! Stores so that Defendants could steal business from, and compete unfairly with, the PCC franchises in Yonkers and Clifton, and other locations.  (Id., ¶¶ 47-54.)

Plaintiffs contend that Defendants used, and are continuing to use, the information

obtained from their involvement with PCC and the Tomax system to compete unfairly with the PC Store Plaintiffs to the great financial detriment of Plaintiffs.  (Id., ¶¶ 55-56.)

## II.  DISCUSSION

### A.     Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997).  All reasonable inferences, however, must be drawn in the plaintiff's favor.  See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist.  See FED. R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46.  "The

defendant bears the burden of showing that no claim has been presented." <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." <u>New York v. Hill</u>, 528 U.S. 110, 118 (2000).  Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile.  "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).

### B.      Counts I and II – Plaintiffs' Claims For Violations Of The CFAA

Defendants move to dismiss Plaintiffs first and second causes of action for violation of the CFAA on the grounds that (1) Plaintiffs have not sufficiently alleged damage or loss, as is necessary to support their claims under the CFAA; and (2) Plaintiffs have failed to plead the third and fourth elements of § 1030(a)(4) with sufficient specificity, as required by FED. R. CIV. P.

#### 1.      *Whether Plaintiffs Have Adequately Pled Damage Or Loss*

The CFAA, while primarily a criminal statute, provides a civil cause of action in § 1030(g):

> Any person who suffers damage ***or*** loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.  A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B). Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages.  No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage.  No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

18 U.S.C. § 1030(g) (emphasis added).

Thus, the CFAA's private cause of action sets forth a two-part injury requirement as a predicate to a civil claim, where a plaintiff must: (1) suffer a root injury of damage or loss; and (2) suffer one of five operatively-substantial effects set forth in subsection (a)(5)(B)(i)-(v).[1]  The factors in Sections 1030(a)(5)(B)(i)-(v) do not address prohibited conduct, but instead list specific forms of "damage" or "loss" that are possible harmful results of violations of other parts of the statute, such as 18 U.S.C. § 1030(a)(4), under which Plaintiffs have brought their claims.

As this Court has explained, subsection (g) first requires civil litigants to suffer "damage" and/or "loss."  18 U.S.C. § 1030(g).  The CFAA defines damage as "any impairment to the integrity or availability of data, a system, or information."  18 U.S.C. § 1030(e)(8). No damage to the data, system, or information on Plaintiffs' computers is alleged within Plaintiffs' CFAA claims.

Loss, treated separate from damage under the CFAA, is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment,

---

[1]Subsection (g) requires civil litigants to allege one of the following five effects set forth in § 1030(a)(5)(B):

(i) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
(ii) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
(iii) physical injury to any person;
(iv) a threat to public health or safety; or
(v) damage affecting a computer system used by or for a government entity in furtherance of the administration of justice, national defense, or national security[.]

18 U.S.C. § 1030(a)(5)(B).

and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

As the Second Circuit found, "the plain language of the [CFAA] treats lost revenue as a different concept from incurred costs, and permits recovery of the former only where connected to an 'interruption in service.'"  Nexans Wires S.A. v. Sark-USA, Inc., 166 Fed. Appx. 559, 562 (2d Cir. Feb. 13, 2006) (citing Civic Ctr. Motors, Ltd. v. Mason Street Import Cars, Ltd., 387 F. Supp.2d 378, 382 (S.D.N.Y. 2005) (ruling that loss of "competitive edge" claim not caused by computer impairment or computer damage was not cognizable under the CFAA); Resdev, LLC v. Lot Builders Ass'n, No. 04-Civ-1374, 2005 WL 1924743, at *5 (M.D. Fla. Aug. 10, 2005) (similar)).  The latter is recoverable regardless of whether there is an interruption in service.

Plaintiffs have alleged that as a result of Defendants' unauthorized access and use of the information contained in the Tomax system, Plaintiffs "have suffered and will continue to suffer substantial losses in excess of $5,000.00, including but not limited to losses sustained in responding to defendants' actions, investigating defendants' actions and taking remedial steps to prevent defendants' further actions."  (Compl, ¶¶ 59, 65.)

These incurred costs are explicitly identified in the CFAA's definition of "loss."  See 18 U.S.C. § 1030(e)(11) (defining "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense . . .").

Moreover, contrary to Defendants' arguments, the losses asserted in Plaintiffs' complaint, which, admittedly, are not derived from any change to the computers themselves or the

information contained therein, qualify as loss under the CFAA, as clearly demonstrated by the

legislative history of the 1996 amendments to the statute:

> The 1994 Amendment required both "damage" and "loss," but it is not always
> clear what constitutes "damage." For example, intruders often alter existing
> log-on programs so that user passwords are copied to a file which the hackers can
> retrieve later. After retrieving the newly created password file, the intruder
> restores the altered log-on file to its original condition. Arguably, in such a
> situation, neither the computer nor its information is damaged. Nonetheless, this
> conduct allows the intruder to accumulate valid user passwords to the system,
> requires all system users to change their passwords, and requires the system
> administrator to devote resources to re-securing the system. Thus, although there
> is arguably no "damage," the victim does suffer "loss." If the loss to the victim
> meets the required monetary threshold, the conduct should be criminal, and the
> victim should be entitled to relief.

S.REP. No. 104-357, at 11 (1996). Relying on this legislative history, various federal courts have

sustained actions based on the type of loss alleged here – the cost to Plaintiffs of responding to

Defendants' misappropriation of their data. See, e.g., EF Cultural Travel BV, EF v. Explorica,

Inc., 274 F.3d 577, 584-85 (1st Cir. 2001) (former employee's use of a "scraper program" to copy

otherwise public information on the former employer's website likely exceeded the authorized

access in violation of the CFAA); Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.,

119 F. Supp.2d 1121, 1126-27 (W.D. Wash. 2000) (CFAA applied in plaintiff employer's suit

against defendant for actively soliciting plaintiff's former employees and requesting that they

transmit confidential files to defendant); Pac. Aerospace & Elecs., Inc. v. Taylor, 295 F. Supp.2d

1188, 1196-97 (E.D. Wash.2003) (CFAA case in which the court looked to the history of the Act

and concluded that it could be applied to prevent a former employee from using wrongfully

acquired trade secret information in order to compete with former employer); George S. May Int'l

Co. v. Hostetler, No. 04-C-1606, 2004 U.S. Dist. Lexis 9740 (N.D. Ill. 2004) (CFAA claim was

properly stated where a former consultant accessed copyrighted materials while still an employee of the consulting firm to be used for his personal benefit).  Thus, Plaintiffs have alleged loss sufficiently, pursuant to § 1030(g).[2]

In addition to pleading damages or loss, to state a claim under the CFAA, Plaintiffs must also allege that they have suffered one of five operatively-substantial effects set forth in subsection (a)(5)(B)(i)-(v).  Here, the Complaint specifically invokes § 1030(a)(5)(B)(i) in each cause of action brought under the CFAA by alleging that Defendants' violation of the CFAA caused Plaintiffs to suffer "not less than $5,000.00" in damage or loss.  (Compl., ¶¶ 59, 65.)  Thus, Plaintiffs sufficiently allege they have suffered a § 1030(a)(5)(B)(i) effect, as required to sustain a civil cause of action, pursuant to 18 U.S.C. § 1030(g).

Because Plaintiffs have alleged adequately the predicate loss and effect required to assert a claim under the CFAA, Defendants' motion to dismiss Plaintiffs' CFAA claims for failure to allege such loss adequately is denied.

        2.     *Whether Plaintiffs Have Alleged "Intent to Defraud" Adequately*

As is clear from the Complaint, and as the Third Circuit found, Plaintiffs' first and second

---

[2]It is true that nowhere in the Complaint do Plaintiffs allege that an interruption of service occurred.  Because Plaintiffs' alleged losses in the CFAA claims take the form of responsive costs, rather than lost revenue, Plaintiffs' claimed loss in excess of $5,000.00 is cognizable under the CFAA, despite the absence of an interruption of service.  Compare Nexans, 166 Fed. Appx. at 562.  To the extent that Plaintiffs claim incalculable loss of revenue, loss of good will, and diversion of their customers (Compl., ¶¶ 60-61, 66), however, such injuries are not cognizable losses under the CFAA.  Nexans, 166 Fed. Appx. at 562.

causes of action purport to allege conduct falling under 18 U.S.C. § 1030(a)(4).[3]  P.C. Yonkers,

428 F.3d at 508.  "A claim under CFAA § 1030(a)(4) has four elements: (1) defendant has

accessed a 'protected computer;' (2) has done so without authorization or by exceeding such

authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud;' and (4) as

a result has 'further[ed] the intended fraud and obtain[ed] anything of value.'"  Id.; (citing 18

U.S.C. § 1030(a)(4) and Pacific Aerospace & Elecs., Inc. v. Taylor, 295 F. Supp. 2d 1188, 1195

(E.D. Wash. 2003)).

Defendants argue that Plaintiffs have failed to state a claim under the CFAA in their

Complaint because they have not, in accordance with FED. R. CIV. P. 9(b), alleged with sufficient

specificity that Defendants intended to defraud them.  Contrary to Defendants' contention, in

order to state a claim under the CFAA, Plaintiffs need only allege the required elements, pursuant

---

[3]Plaintiffs have clearly  articulated that they do not seek to assert a claim under 18 U.S.C.
§ 1030(a)(5).  (See Pls.' Opp. at 18-19.)  Defendants argue that Plaintiffs' Complaint is deficient
because it fails to specify the subsection of the CFAA under which they seek relief.  This Court
does not agree.  The notice-pleading standard of Rule 8(a)(2) does not require that a plaintiff
plead specific subsections of a statute he or she claims has been violated.  See, e.g., Morrow v.
Green Tree Servicing, L.L.C., 360 F. Supp.2d 1246, 1249 (M.D. Ala. 2005) ("defendants offer
no case law supporting the notion that Morrow's pleading must cite a specific subsection of the
FLSA, and such argument runs counter to the 'liberal pleading standards of Rule 8(a)(2)' of the
Federal Rules of Civil Procedure, according to which a pleading need only contain 'a short and
plain statement of the claim showing that the pleader is entitled to relief'") (internal citations
omitted); Patrick Carter Assocs. v. Rent Stabilization Ass'n, 781 F. Supp. 207, 215 n. 7
(S.D.N.Y. 1991) (failure to allege specific subsection not fatal where court found that plaintiffs
had alleged facts supporting violation of subsections (c) and (d)); Kuczynski v. Ragen Corp., 732
F. Supp. 378, 384 (S.D.N.Y. 1989) (holding that allegation of a particular subsection is not
required if plaintiffs plead fraud with particularity such that the Court is able to infer which
section of RICO is implicated).  Because Plaintiffs are not required to plead the specific
subsections of the CFAA, their claims under the statute cannot be dismissed because of their
failure to do so.  Moreover, as the Third Circuit found, Plaintiffs' Complaint clearly indicates
that they seek relief pursuant to 18 U.S.C. § 1030(a)(4).

to Rule 8(a)(2)'s notice-pleading standard.[4]  Despite the fact that the CFAA contains the term "fraud," Rule 9(b)'s[5] heightened pleading standard does not apply to claims made under the statute.  See Lockheed Martin Corp. v. Speed, 2006 WL 2683058, at *3 (finding "that the liberal pleading requirements at this motion-to-dismiss stage do not require such particularity in pleading" claims under the CFAA); C.H. Robinson Worldwide, Inc. v. Command Transp., LLC, No. 05 C 3401, 2005 WL 3077998, at *4 (N.D. Ill. Nov. 16, 2005) (applying Rule 8(a)(2)'s liberal notice-pleading standard to claims under the CFAA, and not the heightened pleading requirements of Rule 9(b)); I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc., 307 F. Supp.2d 521, 533 (S.D.N.Y. 2004) (indicating that a plaintiff's claims under the CFAA must satisfy the general notice-pleading requirements of Rule 8(a) to survive a Rule 12(b)(6) motion to dismiss, not Rule 9(b)'s heightened pleading standard).

Moreover, even if Rule 9(b) did apply, it does not require that the intent element of a claim be pled with specificity.  See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally").

Here, Plaintiffs have alleged that Hack, on his own behalf, and on behalf of Bailen and Celebrations!, "knowingly and with intent to defraud, accessed Plaintiff PC Stores' protected

---

[4]Pursuant to FED. R. CIV. P. 8(a), "[a] pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded."

[5]FED. R. CIV. P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally"

computers without authorization and by exceeding such authorization as may have been granted and as a result obtained valuable data thus furthering the intended fraudulent conduct." (Compl., ¶¶ 58, 64.) These allegations are sufficient to put Defendants on notice of the claims against them, pursuant to FED. R. CIV. P. 12(b)(6) and 8(a). Because Plaintiffs are only required to aver the intent element of their CFAA claims generally, and have done so, Defendants' motion to dismiss Plaintiffs' CFAA claims for failure to allege the intent element of their claims with sufficient particularity is denied.

    **C.**     <u>**Counts III and IV - Plaintiffs' Claims For New Jersey Computer-Related**</u>
          <u>**Offenses**</u>

Defendants contend that Plaintiffs' Complaint fails to state a claim under the Computer-Related Offenses Act, N.J. STAT. ANN. § 2A:38A-1, et seq. ("CROA"). Defendants specifically argue that Plaintiffs' CROA claims fail (1) for all the reasons the CFAA is not applicable; (2) because Plaintiffs fail to identify the specific provisions of the CROA under which they seek relief; (3) because Plaintiffs have failed to set forth in their Complaint how Defendants took their data "purposely and/or knowingly"; and (4) because Plaintiffs have failed to allege how they were "damaged in business or property" by Defendants' purported conduct. Defendants also argue that Plaintiffs' claim for an award of punitive damages, pursuant to the CROA, should be stricken because Plaintiffs have failed to allege their punitive damages claim with sufficient specificity, as required by the New Jersey Punitive Damages Act.

       **1.**     *Whether Plaintiffs Have Alleged Claims Under The CROA*

CROA provides:

A person or enterprise damaged in business or property as a result of any of the following actions may sue the actor therefor in the Superior Court and may

14

recover compensatory and punitive damages and the cost of the suit, including a
reasonable attorney's fee, costs of investigation and litigation:

a.      The purposeful or knowing, and unauthorized altering, damaging, taking or
        destruction of any data, data base, computer program, computer software
        or computer equipment existing internally or externally to a computer,
        computer system or computer network;

b.      The purposeful or knowing, and unauthorized altering, damaging, taking
        or destroying of a computer, computer system or computer network;

c.      The purposeful or knowing, and unauthorized accessing or attempt to
        access any computer, computer system or computer network;

d.      The purposeful or knowing, and unauthorized altering, accessing,
        tampering with, obtaining, intercepting, damaging or destroying of a
        financial instrument; or

e.      The purposeful or knowing accessing and reckless altering, damaging,
        destroying or obtaining of any data, data base, computer, computer
        program, computer software, computer equipment, computer system or
        computer network.

N.J. Stat. Ann. § 2A:38A-3.

        First, to the extent Defendants argue that Plaintiffs' CROA claims should be dismissed

because they suffer the same inadequacies as Plaintiffs' CFAA claims, Defendants' motion is

denied.  As this Court has found, Plaintiffs' CFAA claims are pled sufficiently.

        Second, this Court rejects Defendants' motion to dismiss Plaintiffs' CROA claims on the

ground that they fail to specify the subsections of the statute pursuant to which relief is sought.

The notice-pleading standard of Rule 8(a)(2) does not require that a plaintiff plead specific

subsections of a statute he or she claims has been violated.  See, e.g., Morrow, 360 F. Supp.2d at

1249 ("defendants offer no case law supporting the notion that Morrow's pleading must cite a

specific subsection of the FLSA, and such argument runs counter to the 'liberal pleading

standards of Rule 8(a)(2)' of the Federal Rules of Civil Procedure, according to which a pleading

need only contain 'a short and plain statement of the claim showing that the pleader is entitled to

relief'") (internal citations omitted); Patrick Carter Assocs., 781 F. Supp. at 215 n. 7 (failure to

allege specific subsection not fatal where court found that plaintiffs had alleged facts supporting

violation of subsections (c) and (d)); <u>Kuczynski</u>, 732 F. Supp. at 384 (holding that allegation of a

particular subsection is not required if plaintiffs plead fraud with particularity such that the Court

is able to infer which section of RICO is implicated).  Because Plaintiffs are not required to plead

the specific subsections of the CROA, this Court will not dismiss their claims under the statute

because of their failure to do so.

Third, this Court finds that, contrary to Defendants' argument, Plaintiffs have clearly

alleged how Defendants purposely and/or knowingly took their data, and how Plaintiffs were

"damaged in business or property" by Defendants' purported conduct.  In laying out the facts in

their Complaint, Plaintiffs allege that as senior-level employees, the individual defendants,

Bailen and Hack, had access to general revenue and ranking information pertaining to the PC

Store Plaintiffs, as well as the detailed information in the Tomax system.  (Compl., ¶ 47.)

Plaintiffs contend that Hack improperly accessed this data via modem and used it to determine

where to locate and how to operate the Celebrations! Stores so that Defendants could steal

business from, and compete unfairly with, the PCC franchises in Yonkers and Clifton, and other

locations.  (Id., ¶¶ 47-54.)  Plaintiffs further contend that Defendants used, and are continuing to

use, the information obtained from their involvement with PCC and the Tomax system to

compete unfairly with the PC Store Plaintiffs to the great financial detriment of Plaintiffs.  (Id.,

¶¶ 55-56.)  These allegations, along with others asserting that all Defendants actually or

constructively accessed the Tomax computer over 133 times, and that Plaintiffs' confidential

business information was used by all Defendants to aid their competing retail business (Id., ¶¶ 69

and 74), effectively allege how Defendants purposely and/or knowingly took Plaintiffs' data, and

how Plaintiffs were "damaged in business or property" by Defendants' conduct.  Defendants'

motion to dismiss for failure to allege their  purposeful conduct, and its effect, is denied as a

result.[6]

For the foregoing reasons, this Court finds unavailing Defendants' challenge to Plaintiffs'

CROA claims.  Defendants' motion to dismiss Plaintiffs' third and fourth causes of action is

denied.

## 2.    *Whether Plaintiffs' Claim For Punitive Damages Under The CROA*
##         *Should Be Stricken*

Defendants argue that Plaintiffs' claim for punitive damages, which is asserted in their

fourth cause of action, should be stricken because punitive damage claims must be pled with

specificity in order to comply with New Jersey's Punitive Damages Act.  The Punitive Damages

Act, N.J. STAT. ANN. § 2A:15-5.9 to -.17, provides guidelines for determining whether punitive

damages may be awarded.  The Act, which  is designed to punish a wrongdoer and deter future

misconduct, provides that punitive damages may be awarded only if the plaintiff proves that the

defendant caused harm, and the harm suffered resulted from defendant's actual malice or wanton

_____

[6]Defendants, throughout their briefs and in relation to various causes of action asserted in
the Complaint, argue that the Third Circuit's ruling, which affirmed this Court's denial of
Plaintiffs' request for a preliminary injunction, is a basis for dismissing the Complaint.  This
Court cannot agree.  The Third Circuit found that a preliminary injunction was not warranted
because Plaintiffs had failed to adduce sufficient evidence demonstrating that they were likely to
succeed on the merits of their claims.  That inquiry is separate and distinct from this Court's
inquiry on a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).  This Court cannot find that
the Third Circuit's opinion or findings regarding the sufficiency of proof adduced at that stage of
the proceedings has any bearing on whether Plaintiffs have stated a claim upon which relief can
be granted.  See Hishon, 467 U.S. at 73 (on a Rule 12(b)(6) motion, the question is whether the
claimant can prove any set of facts consistent with his or her allegations that will entitle him or
her to relief, not whether that person will ultimately prevail).

and willful disregard of the plaintiff's rights.  N.J. STAT. ANN. § 2A:15-5.10 to -.12(a).  The New

Jersey Supreme Court has defined "actual malice" as "nothing more or less than intentional

wrongdoing."  Fineman v. Armstrong World Industries, Inc., 980 F.2d 171, 196 (3d Cir. 1992)

(citation omitted).  See also  Sandler v. Lawn-A-Mat Chemical & Equipment Corp., 141 N.J.

Super. 437, 448 (App. Div.), cert. denied, 71 N.J. 503 (1976).  Thus, to assert a claim for

punitive damages, Plaintiffs must allege that Defendants wronged them intentionally.  Contrary

to Defendants' argument, nothing more specific need be alleged.[7]

     Here, Plaintiffs have alleged that Defendants "knowingly and intentionally accessed

Plaintiff PC Stores' data and use[d] it to obtain a competitive advantage and compete unfairly

with PC Yonkers, PC Clifton, and the other Plaintiff PC Stores."  (Compl., ¶ 74.)  Plaintiffs

further allege that "Defendants purposely and/or knowingly accessed Plaintiff PC Stores'

computers without authorization, took their computer data and used it in a manner to obtain a

competitive advantage, open a party goods retail business and compete unfairly with PC

Yonkers, PC Clifton, and the other Plaintiff PC Stores."  (Id., ¶ 75.)  These allegations clearly

assert that Defendants engaged in intentional wrongdoing, i.e., that they acted with actual malice.

Plaintiffs, therefore, have stated a claim for punitive damages, and Defendants' motion to strike

Plaintiffs' punitive damages claim in the fourth cause of action is denied.

---

     [7]This Court cannot locate, and Defendants have failed to proffer, any authority indicating that specific allegations are necessary for a punitive damages claim to survive a 12(b)(6) motion to dismiss for failure to state a claim.  The New Jersey Punitive Damages Act does implement a higher burden of proof for a plaintiff seeking to establish punitive damages at the trial phase of the proceedings, i.e., "clear and convincing evidence," see N.J. STAT. ANN. § 2A:15-5.12(a), but the Act in no way alters the generally applicable notice-pleading standard, which is the focus of this Court's attention in evaluating whether Plaintiffs have pled their claims adequately.

### D.      Counts V and VI - Plaintiffs' Claims For Misappropriation Of Trade Secrets

Plaintiffs fifth and sixth causes of action purport to assert claims for misappropriation of trade secrets.  Defendants argue that Plaintiffs' Complaint fails to state a claim for misappropriation of trade secrets because (1) Plaintiffs have failed to allege adequately the existence of trade secrets; and (2) Plaintiffs have failed to allege that they have sustained any real harm.[8]  (Hack's Br. at 12-13; Def.'s Br. at 19-21.)  Plaintiffs counter that they have adequately alleged claims for misappropriation of trade secrets.  (Pl.'s Br. at 25-28.)

### 1.      *Legal Standard Governing Claims For Misappropriation Of Trade Secrets Under New Jersey Law*

To state a claim for misappropriation of trade secrets under New Jersey law, a plaintiff must allege: "(1) the existence of a trade secret, (2) communicated in confidence by the plaintiff to the employee, (3) disclosed by the employee in breach of that confidence, (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff."  Rohm and Haas Co. v. Adco Chemical Co., 689 F.2d 424, 429-430 (3d Cir. 1982) (citing Stone v. Goss, 65 N.J. Eq. 756, 759-60 (1903); Ferroline Corp. v. General Aniline & Film Corp., 207 F.2d 912, 921 (7th Cir. 1953) (applying New Jersey law), cert. denied, 347 U.S. 953 (1954)).  In addition, New Jersey law requires that the plaintiff allege that "he took precautions to maintain the secrecy of the trade secret."  Rohm and Hass, 689 F.2d at 430 (citing Sun Dial Corp. v. Rideout, 16 N.J. 252, 260 (1954)).

New Jersey has adopted the definition of a trade secret provided in the Restatement of Torts: "A trade secret may consist of any formula, pattern, device or compilation of information

---

[8]Defendants argue that any damages alleged in the Complaint are speculative at best.

19

which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Rohm, 689 F.2d at 431 (citing RESTATEMENT OF TORTS § 757, comment b (1939); Sun Dial Corp. v. Rideout, 16 N.J. 252, 257 (1954)).  A trade secret is information, which is the secret of a particular employer and not a matter of general knowledge in the industry.  Rohm, 689 F.2d at 431 (citing Sun Dial Corp., 16 N.J. at 257).  With respect to secrecy, the Restatement of Torts instructs:

> Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret.  Matters which are completely disclosed by the goods which one markets cannot be his secret. Substantially, a trade secret is known only in the particular business in which it is used.  It is not requisite that only the proprietor of the business know it.  He may, without losing his protection, communicate it to employees involved in its use.  He may likewise communicate it to others pledged to secrecy.  Others may also know of it independently, as, for example, when they have discovered the process or formula by independent invention and are keeping it secret.  Nevertheless, a substantial element of secrecy must exist, so that, except by the use of improper means, there would be difficulty in acquiring the information.

RESTATEMENT OF TORTS § 757, comment b (1939); see also Merckle GmbH v. Johnson & Johnson, 961 F. Supp. 721, 731 (D.N.J. 1997).

## 2. *Whether Plaintiffs Adequately Allege The Existence Of A Trade Secret*

Plaintiffs' Complaint alleges that Defendants misappropriated the data contained on the Tomax system.  The Tomax system stores revenue and customer data as well as product and vendor information for all PCC stores.  (Compl., ¶¶ 37-38.)  This information includes data tracking each PCC franchise's sales on a daily, weekly, monthly, and annual basis ("financial information"); each customer's zip code ("customer data"); data concerning the number of units, prices, and sales of particular merchandise ("merchandise information"); and vendor rosters and terms relating to discounts, promotions, and dates by which products should be ordered for a

particular holiday season ("vendor information").  (Id., ¶¶ 39-42.)  Plaintiffs contend that all of

this information constitutes valuable trade secrets and confidential proprietary information

acquired by the PC Store Plaintiffs at great expense; in addition to the cost of installing the

hardware and software required to use the Tomax system, the PC Store Plaintiffs collectively pay

over $1 million per year for PCC to analyze, consolidate, report, and supply the information to

them.  (Id., ¶¶ 43-44.)  Plaintiffs further contend that all the information in the Tomax system is

historical, having been developed through years of operation, such that it cannot be obtained

from other sources or duplicated.  (Id., ¶ 45.)

Plaintiffs' Complaint also alleges that Plaintiffs took various precautionary measures to

ensure that the information on the Tomax system was kept from the general public.  According to

Plaintiffs, each computer on which Tomax information is located is kept in a locked office to

which only senior-level managers in Plaintiffs' employ have access.  (Id., ¶ 38.)  PCC also

requires the PC Store Plaintiffs to install and maintain a toll free telephone line and modem so

that PCC can dial in, inspect, and monitor information concerning their stores.  (Id.)  Each PC

Store Plaintiff has a different password and toll free number.  (Id.)  Although PCC can review

information from all of the stores in its franchise, each of the PC Store Plaintiffs can only review

data pertaining to its own store.  (Id.)

Contrary to Defendants' arguments, the financial information, customer data,

merchandise information, and vendor information allegedly contained on the Tomax system,

having been compiled through and for use in Plaintiffs' business, and having been stored for

Plaintiffs' exclusive use and protected from dissemination to the general public, constitute trade

secrets.[9]  See RESTATEMENT OF TORTS § 757, comment b (1939); see, e.g., MAI Systems Corp.
v. Peak Computer, Inc., 991 F.2d 511, 521 (9th Cir. 1993) ("We agree that the Customer
Database qualifies as a trade secret.  The Customer Database has potential economic value
because it allows a competitor like Peak to direct its sales efforts to those potential customers
that are already using the MAI computer system.  Further, MAI took reasonable steps to insure
the secrecy to this information . . ."); Apollo Technologies Corp. v. Centrosphere Indus. Corp.,
805 F. Supp. 1157, 1204 (D.N.J. 1992) ("In appropriate circumstances, information on pricing,
discounts and other relevant customer data may enable an agent to take unfair advantage of its
principal and therefore constitute protectible trade secrets").  Defendants' motion to dismiss
Plaintiffs' misappropriation claims on the ground that Plaintiffs have failed to allege the
existence of a trade secret is denied.

### 3. *Whether Plaintiffs Adequately Allege That Defendants Used The Trade Secrets To Their Detriment*

Defendants also argue that Plaintiffs have failed to allege that Defendants used the
purported trade secrets to Plaintiffs' detriment.  This Court cannot agree.  As the Complaint
alleges, "Defendants' misappropriation of Plaintiff PC Stores' valuable trade secrets and
confidential and proprietary information and unfair competition is causing, and will continue to
cause, Plaintiff PC Stores to suffer the diversion of customers and damages to their business and
loss of good will in an amount to be determined by the court."  (Compl., ¶ 87.)  The Complaint
also alleges that Defendants' misappropriation and use of Plaintiffs' trade secrets is causing, and

---

[9]This case does not present a circumstance where a database was compiled from
publically available information.  The data comprising the Tomax system databases was
allegedly compiled by Plaintiffs and shielded from the general public for their use.

will continue to cause, Plaintiffs to suffer loss of revenue, diversion of customers, and other incalculable damages to their business.  (Compl., ¶¶ 81-82.)  These allegations are sufficient, under Rule 8(a)(2)'s liberal notice-pleading standard, to assert that Defendants have used the Plaintiffs' alleged trade secrets to the detriment of Plaintiffs for the purposes of alleging a misappropriation of trade secrets claim.  See Rohm, 689 F.2d at 430.  Defendants' motion to dismiss Plaintiffs' misappropriation of trade secret claims is denied.

### E.    Count VII - Plaintiffs' Claim For Breach Of The Duty Of Loyalty[10]

Defendant Hack also argues that Plaintiffs' cause of action for breach of the duty of loyalty should be dismissed for failure to state a claim upon which relief may be granted.  "An employee owes a duty of loyalty to the employer and must not, while employed, act contrary to the employer's interest."  Chernow v. Reyes, 239 N.J. Super. 201, 204 (App. Div. 1990) (citing Auxton Computer Enterprises, Inc. v. Parker, 174 N.J. Super. 418, 425 (App. Div. 1980).  "During the period of employment, the employee has a duty not to compete with the employer's business."  Chernow, 239 N.J. Super. at 204 (citing United Board & Carton Corp. v. Britting, 63 N.J. Super. 517, 524 (Ch. Div. 1960), aff'd 61 N.J. Super. 340 (App. Div. 1960)).

As the Auxton court explained,

[a]n employee who is not bound by a covenant not to compete after the termination of employment, and in the absence of any breach of trust, may anticipate the future termination of his employment and, while still employed, make arrangements for some new employment by a competitor or the establishment of his own business in competition with his employer.  The only restriction to such action is that he may not solicit his employer's customers for his

---

[10]The Complaint actually lists Plaintiffs' claim for breach of the duty of loyalty as "Count VI."  This Court interprets this as a typo in light of the fact that six counts precede Plaintiffs' breach of the duty of loyalty cause of action.  Accordingly, this Court will consider Plaintiffs' claim for breach of the duty of loyalty as "Count VII."

own benefit before he has terminated his employment.  Nor may he do other
similar acts in direct competition with the employer's business.  This would
constitute a breach of the undivided loyalty which the employee owes to his
employer while he is still employed.

Auxton, 174 N.J. Super. at 423-424.

The employee's common law duty also precludes him from disclosing trade secrets or
confidential information of his employer, *even after his employment has ended.*  Sun Dial Corp.
v. Rideout, 16 N.J. 252, 259 (1954).  The employer's remedy for disclosure of trade secrets by a
current or former employee is based on "the employees' wrongful conduct in violating the
confidence, by using the uniquely valuable information for purposes other than their employer's
benefit," not on the existence of a contract.  Id.

Nevertheless, with significant limitations, absent an agreement to the contrary, an
employee may make preparatory arrangements in anticipation of new employment in competition
with his current employer.  Auxton, 174 N.J. Super. at 423; United Board, 63 N.J. Super. at 530.
In Lamorte Burns & Co., Inc. v. Walters, 167 N.J. 285 (2001), however, the New Jersey Supreme
Court held that certain preparatory arrangements made by employees in anticipation of future
employment established by employees to compete directly with their current employer, did in
fact constitute a breach of employees' duty of loyalty to their employer.  In Lamorte, employees
purloined protected information from employer's client files while still employed for the sole
purpose of obtaining an advantage in competing with employer immediately upon their
resignation and the commencement of their new competitive business.  Id. at 304-305.  This
conduct was found to be in breach of the duty of loyalty owed by the former employee to his
former employer.  Id. at 305.

Plaintiffs' Complaint alleges that during the course of his employment with PC

24

Management, Hack owed a duty of loyalty to the company.  (Compl., ¶ 89.)  According to the Complaint, PCC's personnel handbook mandated that Hack not divulge PCC data to third parties.  (Id., ¶ 33.)  The Complaint further asserts that "defendant Hack breached his duty of loyalty to PC Management by making preparations for future employment in a newly created business entity . . ., and by accessing Plaintiff PC Stores' Tomax system to obtain trade secrets and confidential and proprietary information for the purpose of engaging in unfair competition." (Compl., ¶ 90.)

Contrary to Hack's contentions, these allegations suffice to state a claim for breach of the duty of loyalty.  Plaintiffs allege that, like the conduct found to constitute a breach of loyalty in Lamorte, Hack purloined protected information from employer's client files while still employed for the purpose of obtaining an advantage in competing with Plaintiffs immediately upon his departure from their employ, and the commencement of his new competitive business.  See Lamorte, 167 N.J. at 305.  See also Britting, 63 N.J. Super. At 524 (Ch. Div. 1960) (defendants, former salesmen for the plaintiff, secretly set up rival corporation while in plaintiff's employ, pirated a substantial part of plaintiff's corrugated paper business, stole customers' information and then resigned en masse; court enjoined defendants from doing business with plaintiff's former customers for two-year period).  Hack allegedly intentionally began a process of subverting his employer's business while still employed by "gathering by stealth [P]laintiff[s'] legally protected information admittedly to seek an advantage in competing with [P]laintiff once [he] resigned. Obviously those actions were contrary to [P]laintiff[s'] interest."  Id. at 305.

Plaintiffs, therefore, have stated successfully a claim for breach of the duty of loyalty against Defendant Hack, and Hack's motion to dismiss this claim against him is denied.

**III.  <u>CONCLUSION</u>**

For the reasons stated above, Defendants' motions to dismiss are denied.


Dated: March 2, 2007                              <u>    s/ Joseph A. Greenaway, Jr.        </u>
                                                   JOSEPH A. GREENAWAY, JR., U.S.D.J.

26